**In re John W. SMALL, Relator.**

**No. 14–08–01075–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 7, 2009.

Ervin A. Apffel, Jr., Dawn Arney Moore, Galveston, for relator.

John F. Nichols, Sr., Bradford W. Irelan, Pamela K. Bergman, Houston, for real parties in interest.

Panel consists of Justices YATES, ANDERSON, and BOYCE.

## OPINION ON REHEARING

JOHN S. ANDERSON, Justice.

Relator's motion for rehearing is granted. The opinion issued on February 26, 2009, is withdrawn. This opinion is substituted in its place.

On November 25, 2008, relator, John W. Small, filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (Vernon 2004); *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Mary Nell Crapitto, presiding judge of County Court at Law No. 1 of Galveston County, to set aside her October 31, 2008 order finding relator in contempt for failing to pay court-ordered temporary spousal support to real party in interest, Murriah S. McMaster, and to to reverse her November 1, 2005 order awarding temporary spousal support to McMaster. We conditionally grant the petition for writ of mandamus.

### BACKGROUND

In April 2005, a jury found that relator and McMaster had entered a common law marriage on December 25, 1991. On May 17, 2005, the trial court entered an interlocutory judgment adopting the jury's finding. On November 1, 2005, after holding hearings on July 20, 2005 and September 12, 2005, the trial court signed an order directing relator to pay McMaster monthly temporary support in the amount of $4,000.00.

On March 8, 2006, the trial court held a hearing on McMaster's first motion for enforcement of temporary spousal support. On April 20, 2006, the trial court signed an order, finding relator in contempt for failing to pay temporary support from November 1, 2005 through March 1, 2006.

On May 1, 2006, relator filed a petition for writ of mandamus in this court, requesting that we direct the trial court to deny any motion for enforcement of temporary support filed by McMaster, reverse its April 20, 2006 contempt and commitment order, and modify the November 1, 2005 order for temporary support. On June 1, 2006, this court denied relator's petition for writ of mandamus.

In October 2007, the trial court held a second jury trial on issues of community property. The jury made findings regarding which properties were community property, relator's separate property, or third party property, and findings regarding the value of the community property. The jury further found that relator had committed fraud with respect to the community property rights of McMaster. On October 26, 2007, the trial court granted

McMaster's motion for appointment of joint receivers. On November 8, 2007, relator filed for bankruptcy.[1]

On February 15, 2008, the bankruptcy court entered an order granting partial relief from the bankruptcy stay. *See* 11 U.S.C.A. § 362(a)(1) (West 2004) (filing of bankruptcy petition stays commencement or continuation of judicial proceeding against debtor). The bankruptcy court modified the stay to allow the trial court to (1) enter judgment from the October 2007 trial "consistent with the evidence and the jury verdict," (2) enter a divorce between relator and McMaster, (3) determine the amount of any future support owed by relator to McMaster so long as such support is paid from relator's future earnings and not from property of the bankruptcy estate, (4) determine the amount of any monetary damages claim held by McMaster against relator, (5) enter any other order against any non-debtor parties, and (6) allocate the community estate between relator and McMaster. The order also allows any party to the underlying proceeding to "prosecute any appeal of the orders and/or judgments" of the trial court.

On October 29, 2008, the trial court held a hearing on McMaster's fifth motion to enforce in which McMaster asked the trial court to direct relator to pay the $20,000 in arrears previously ordered on April 20, 2006, and $124,000 in arrears through October 1, 2008. On October 31, 2008, the trial court entered an order, finding that relator was able to pay temporary monthly spousal support in the amount of $4,000.00 from April 1, 2006 through October 1, 2008, and is in arrears in the amount of $124,000.00 for that period. The trial court found relator in contempt for each violation and assessed confinement in Galveston County jail for 179 days, but probated the sentence for one year provided that relator paid the $124,000.00 in arrears in four installments of $31,000.00 each on or before December 1, 2008, January 3, 2009, February 2, 2009, and March 2, 2009. The trial court also assessed attorney's fees and costs in the amount of $8,694.15 against relator and directed that he pay such amount on or before March 2, 2009. The trial court further ordered relator to pay the $20,000.00 in arrears, as directed in the April 20, 2006 contempt order, and $25,000.00 in attorney's fees, as directed in the November 1, 2005 order, on or before March 2, 2009.

■ In his motion for rehearing, relator argues, for the first time, the October 31, 2008 contempt order is void because it violates the automatic bankruptcy stay.[2] "Because in Texas we recognize that a judgment entered in violation of the bankruptcy stay is void for lack of jurisdiction, this is a fundamental error that can be recognized by the appellate court, sua sponte, or raised for the first time on appeal by a party." *Houston Pipeline Co. LP v. Bank of Am., N.A.*, 213 S.W.3d 418, 429 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Therefore, we will address this issue.

## Standard of Review

■ Because relator is not restrained, petition for writ of mandamus, rather than habeas corpus, is relator's only possible

---

**1.** Relator had previously filed pro se a bankruptcy petition on July 19, 2005, which was dismissed on January 31, 2006.

**2.** In his petition, relator claimed he was denied due process because he was not allowed to put on his defenses to McMaster's motion

to enforce, he is not financially able to pay the court-ordered temporary spousal support, and, alternatively, the November 1, 2005 order awarding temporary spousal support is void.

relief. *In re Long,* 984 S.W.2d 623, 625 (Tex.1999) (orig. proceeding) (per curiam); *Rosser v. Squier,* 902 S.W.2d 962, 962 (Tex.1995) (orig. proceeding) (per curiam). To be entitled to the extraordinary relief of a writ of mandamus, the relator generally must show that the trial court clearly abused its discretion and he has no adequate remedy by appeal. *In re Team Rocket, L.P.,* 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). When a challenged order is void for lack of jurisdiction, the relator is not required to establish that he has no adequate remedy by appeal. *In re S.W. Bell Tel. Co.,* 35 S.W.3d 602, 605 (Tex.2000) (per curiam).

 Section 6.502 of the Texas Family Code provides for temporary support while a suit for dissolution of a marriage is pending. Tex. Fam. Code Ann. § 6.502(a)(2) (Vernon 2006). Generally, a person who willfully disobeys a valid court order is guilty of contempt and subject to imprisonment for a prescribed period until he complies with the order. *Ex parte Hall,* 854 S.W.2d 656, 658 (Tex.1993) (orig. proceeding). An order requiring temporary support payments is enforceable by contempt. *Id.*

### BANKRUPTCY STAY

 The filing of a bankruptcy petition stays:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of

the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C.A. § 362(a)(1). An automatic stay is triggered when a bankruptcy petition is filed, whether or not a party or the non-bankruptcy court learns of the bankruptcy prior to taking action against the debtor. *Darr v. Altman,* 20 S.W.3d 802, 806–07 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Paine v. Sealey,* 956 S.W.2d 803, 805 (Tex.App.-Houston [14th Dist.] 1997, no pet.). The automatic bankruptcy stay abates any judicial proceeding against the debtor,[3] depriving state courts of jurisdiction over the debtor and his property until the stay is lifted or modified. *Baytown St. Bank v. Nimmons,* 904 S.W.2d 902, 905 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *S. County Mut. Ins. Co. v. Powell,* 736 S.W.2d 745, 748 (Tex. App.-Houston [14th Dist.] 1987, orig. proceeding). An action taken in violation of the automatic bankruptcy stay is void, not merely voidable. *Howell v. Thompson,* 839 S.W.2d 92, 92 (Tex.1992) (order); *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex.1988) (per curiam). The terms of an order modifying the automatic stay must be strictly construed. *Stephens v. Hemyari,* 216 S.W.3d 526, 529 (Tex.App.-Dallas 2007, pet. denied) (citing *Casperone v. Landmark Oil & Gas Corp.,* 819 F.2d 112, 114 (5th Cir. 1987)).

 Section 362(b)(1) provides the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of a *criminal action or proceeding* against the debtor; ..." 11 U.S.C. § 362(b)(1) (emphasis added). Thus, the commencement or continuation of a criminal contempt action is not automatically

---

**3.** *In re S.W. Bell Tele. Co.,* 35 S.W.3d at 604.

stayed by filing a bankruptcy petition. *In re Wiese*, 1 S.W.3d 246, 249 (Tex.App.-Corpus Christi 1999, orig. proceeding).[4] "'This exception is consistent with the strong federal policy against federal interference with state court criminal prosecutions.'" *In re Roussin*, 97 B.R. 130, 132 (D.N.H.1989) (quoting 2 Collier on Bankruptcy ¶ 362.05, at 362–44(15th ed. 1988)). We must determine whether the order at issue is for criminal or civil contempt.

■■■■ The distinction between civil and criminal contempt is based on the nature and purpose of the penalty imposed. *Ex parte Johns*, 807 S.W.2d 768, 770 (Tex.App.-Dallas 1991, orig. proceeding). In a civil contempt proceeding, the court is attempting to persuade the contemnor to obey a previous order. *Id.; see also Ex parte Harrison*, 741 S.W.2d 607, 609 (Tex.App.-Dallas 1987, orig. proceeding) (explaining purpose of civil contempt order is to encourage obedience). A judgment providing that a contemnor is to be committed unless and until he performs the affirmative act required by the court's order is a civil contempt order. *In re Mott*, 137 S.W.3d 870, 875 (Tex.App.-Houston [1st Dist.] 2004, orig. proceeding); *Ex parte Johns*, 807 S.W.2d at 770. Where the contemnor can avoid incarceration by obeying the court's order, the contemnor is said to " 'carr[y] the keys of [his] prison in [his] own pocket.' " *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex.1976) (orig. proceeding) (quoting *Shillitani v. U.S.*, 384 U.S. 364, 368, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)).

■■■■ The purpose of a criminal contempt order is to punish for disobedience. *Ex parte Harrison*, 741 S.W.2d at 609. A criminal contempt order is punitive and unconditional in nature and is an exertion of the court's inherent power to punish the contemnor for a completed act that affronted the court's dignity and authority. *Ex parte Werblud*, 536 S.W.2d at 545; *Gonzalez v. State*, 187 S.W.3d 166, 170 (Tex.App.-Waco 2006, no pet.). Generally, the punishment for criminal contempt is fixed and definite; no subsequent voluntary compliance on the part of the defendant can enable him to avoid punishment for his past acts. *Ex parte Werblud*, 536 S.W.2d at 546 (quoting *Ex parte Hosken*, 480 S.W.2d 18, 23 (Tex.Civ.App.-Beaumont 1972, orig. proceeding)). The key feature that distinguishes criminal contempt from civil contempt is that its penalty is unconditional. *Ex parte Johns*, 807 S.W.2d at 771.

■■■■ With regard to "criminal contempt," the October 31, 2008 order states:

### Criminal Contempt

IT IS ORDERED that punishment for each separate violation is assessed at confinement in the county jail of Galveston County, Texas, for a period of one hundred and seventy-nine (179) days.

IT IS THEREFORE ORDERED that Respondent is committed to the county jail of Galveston County, Texas, for a period of one hundred and seventy-nine (179) days for each separate violation enumerated above.

---

**4.** *See also In re Musilli*, 398 B.R. 447, 454 (E.D.Mich.2008) (stating criminal contempt proceedings to "uphold the dignity of the court" and enforce court's orders are not subject to automatic stay provisions of section 362); *In re Allison*, 182 B.R. 881, 884 (N.D.Ala.1995) ("By virtue of 11 U.S.C. § 362(b)(1), the commencement or continuation of an action for criminal contempt is not stayed by the filing of a petition in bankruptcy."); *In re Kearns*, 168 B.R. 423, 426 (D.Kan. 1994) ("To the extent plaintiff claims that the contempt proceedings were intended to uphold the dignity of the court and punish him for failure to comply with previous court orders, such actions are excepted from the automatic stay.").

IT IS ORDERED that each period of confinement assessed in this order shall run and be satisfied concurrently.

The order further probated relator's commitment for one year on the conditions that relator pay: (1) the $124,000.00 in four equal installments of $31,000.00 on December 1, 2008, January 3, 2009, February 2, 2009, and March 2, 2009; (2) pay McMaster's attorney's fees and costs in the amount of $8,694.15 by March 2, 2009; and (3) all spousal support as ordered on November 1, 2005.

The order also set four compliance hearings, at which relator is ordered to appear, to determine whether relator has made the $31,000.00 installment payments to McMaster. The fourth compliance hearing is also to determine whether relator has made the $20,000 for support payments awarded on April 20, 2006 (the first contempt order), the $25,000.00 in attorney's fees awarded on November 1, 2005, and the $8,694.15 in attorney's fees awarded on October 29, 2008.

Even though the order states relator is being sentenced to a jail term for "criminal contempt," it also provides relator may avoid jail time by making the four installment payments to McMaster. Therefore, we conclude the order is actually a civil contempt order. *See Ex parte Werblud*, 536 S.W.2d at 545 (quoting *Shillitani*, 384 U.S. at 368, 86 S.Ct. 1531) (explaining, where contemnor can avoid incarceration by obeying court's order, contemnor is said to " 'carr[y] the keys of [his] prison in [his] own pocket' ").

■ Bankruptcy courts take two approaches to determining whether a civil

contempt proceeding is subject to the automatic bankruptcy stay. Some courts hold, because civil contempt is not among the exceptions found in section 362(b), such actions are considered private collection devices and come within the scope of the automatic stay. *In re Wiley*, 315 B.R. 682, 687 (E.D.La.2004) (quoting *In re Newman*, 196 B.R. 700, 704 (S.D.N.Y.1996)); *In re Lincoln*, 264 B.R. 370, 373–74 (E.D.Pa. 2001).[5] Other courts do not look to the civil or criminal nature of the state court proceedings, but look at the circumstances surrounding the issuance of the order of contempt to determine whether the intent of the court was (1) to enforce compliance with a court order, i.e., satisfy a judgment, or (2) to uphold the dignity of the court or simply to punish. *In re Wiley*, 315 B.R. at 687; *In re Lincoln*, 264 B.R. at 373–74. Where the contempt citation is designed to uphold an order of the court and not calculated to enforce a money judgment, i.e., pursue a "collection motive," enforcement of that order does not violate the bankruptcy stay. *In re Rook*, 102 B.R. 490, 493 (E.D.Va.1989).

We need not decide which approach to follow because, under either, the October 31, 2008 contempt order violates the bankruptcy stay. Under the first approach, the civil contempt order is subject to the bankruptcy stay because civil contempt is not one of the enumerated exceptions found in the bankruptcy code. The contempt order also violates the bankruptcy stay under the second approach because it is designed to coerce relator's compliance with the November 1, 2005 order awarding the temporary spousal support.

---

5. This was the approach taken by the Corpus Christi Court of Appeals in *In re Wiese*, 1 S.W.3d at 249. In that case, the court of appeals held the civil contempt portion of an order violated the bankruptcy stay and was void, but held the criminal contempt portion of the order was not subject to the bankruptcy stay and considered the merits of the criminal contempt. *Id.*

Moreover, we further conclude the bankruptcy court's February 15, 2008 order for partial relief from the bankruptcy stay does not allow the trial court to enter a civil contempt order. Although McMaster may have a "monetary damages claim" against relator with regard to her claim for temporary support, the February 15, 2008 order only permits the trial court to determine the amount of such claim. The February 15, 2008 order also only allows the trial court to determine the amount of any future support owed by relator to McMaster so long as support is paid from relator's future earnings and not from property of the bankruptcy estate. McMaster sought payment for past support.

In her response to relator's motion for rehearing, McMaster argues, under the Bankruptcy Code, relator may pay the court-ordered temporary spousal support from money in offshore bank accounts, which a jury previously has found to be community property. The filing of a bankruptcy petition does not operate as stay "of the collection of a domestic support obligation from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(B). However, the February 15, 2008 order expressly provides "all community property is property of the bankruptcy estate," and further finds "[i]t is agreed that all property that is the subject of the jury verdict and divorce proceeding is either community property or debtor's separate property, save and except the real property located at 2901 Broadway." Therefore, all community property, including property found by the jury to have been fraudulently transferred, is covered by the bankruptcy stay.

## CONCLUSION

We conclude the trial court's October 31, 2008 order granting McMaster's fifth motion to enforce, and holding relator in civil contempt is void in violation of the bankruptcy stay. Accordingly, we conditionally grant relator's petition for writ of mandamus and direct the trial court to vacate its October 31, 2008 order. The writ will issue only if the trial court fails to act in accordance with this opinion.