Martha Hill Jamison, Justice
Tokes Adeleye appeals from a final decree of divorce in which the trial court determined that a valid marriage occurred between Adeleye and Margaret Modupe Driscal on May 18, 1984 in Nigeria and then dissolved that marriage and divided the property and debts of the marriage. In eight appellate issues, Adeleye contends that (1) the evidence was insufficient to support the trial court's determination that *471 a valid marriage occurred between Adeleye and Driscal; (2) the trial court erred in permitting an expert witness to testify on a topic not raised in the pleadings; (3) the trial court erred in not assuming Nigerian law was the same as Texas law in the absence of proper pleadings regarding Nigerian law; (4) the trial court erred in granting a judgment that did not conform to the pleadings in the absence of trial by consent; (5) the trial court erred in not applying the presumption that the most recent marriage of a party is valid as against a prior marriage; (6) Driscal did not have standing or capacity to bring the divorce proceeding; (7) the trial court erred in awarding certain property to Driscal that belonged to a third party; and (8) the trial court did not have personal jurisdiction over Adeleye as a nonresident of Texas.
It was suggested during the course of trial court proceedings as well as in this appeal that Adeleye had a pending bankruptcy case. We therefore abated the appeal and remanded to the trial court for further development of the record regarding the bankruptcy and any potential conflict with the automatic bankruptcy stay. See Adeleye v. Driscal , 488 S.W.3d 498, 499-500 (Tex. App.-Houston [14th Dist.] 2016, no pet.). It now appears that Adeleye filed for bankruptcy prior to the filing of the divorce petition and that the bankruptcy stay was not lifted prior to issuance of the divorce decree.
In the first part of this opinion we address the impact of the bankruptcy proceedings on this divorce case and conclude that the portions of the decree concerning division of the marital estate are void. In the second part of this opinion, we address Adeleye's jurisdictional issues. And, in the final part of the opinion, we address Adeleye's evidentiary sufficiency and other issues pertaining to the existence of a valid marriage.[1] We affirm the decree to the extent it recognized and dissolved the couple's marriage, and we reverse and remand the remainder of the decree for division of the marital estate. We further deny as moot the petition for mandamus that Adeleye filed after we remanded the case to the trial court.[2]
I. Impact of Adeleye's Bankruptcy
A. Prior Proceedings Relating to the Bankruptcy
Driscal filed her petition for divorce on November 1, 2013, and the trial court held a bench trial in September 2014. On October 8, 2014, prior to rendition of judgment, Adeleye informed the judge in open court that he had filed for Chapter 13 bankruptcy in 2013. The trial judge then asked Adeleye if he had previously informed the court about the bankruptcy and specifically asked if he had filed a "suggestion of bankruptcy" with the court. Adeleye responded that he had not, and the trial judge rendered judgment dissolving the marriage and dividing the marital estate.
Adeleye appealed, and we initially affirmed the trial court's judgment on March 8, 2016. On March 21, Adeleye informed this court for the first time that he had filed for bankruptcy on January 1, 2013, prior to any proceedings in this case. We therefore withdrew our judgment, abated *472 the appeal, and remanded to the trial court "for a determination as to whether an automatic bankruptcy stay barred the proceedings in this case." Adeleye , 488 S.W.3d at 499. To aid the trial court, we set forth the law governing automatic bankruptcy stays, including that such stays apply automatically, do not require notice to other parties or courts, apply to divorce proceedings to the extent they seek to divide the marital estate, render void any action taken against the debtor or his property, and can be raised at any time, even sua sponte on appeal. Id. We further directed that "[t]he parties should have ... an opportunity to develop a record to support their positions" regarding whether and to what degree an automatic bankruptcy stay may have barred the proceedings in the trial court. Id. at 500 (quoting Evans v. Unit 82 Joint Venture , 377 S.W.3d 694, 695 (Tex. 2012) ).
On November 14, 2016, Adeleye filed a petition for writ of mandamus complaining, among other things, regarding the trial court's refusal to hold a hearing on the issue of the bankruptcy stay. Two days later, the trial court signed an order stating, in relevant part:
The Court finds that there was no notice of filing for Bankruptcy presented to the Court. The Court finds that if there was proper notice given of the filing of bankruptcy that an automatic stay would have been issued and the Court would have requested the attorneys to have the stay lifted prior to any further proceedings.
After receiving this order, we issued our own clarifying order, explaining that the trial court's findings did not accomplish the purpose for the original abatement and expressly directing the trial court to make written findings of fact regarding: (1) the date or dates a bankruptcy petition involving any of the parties to this proceeding was filed, if any; (2) the date or dates an automatic stay in any relevant bankruptcy case was lifted, if any; (3) whether and how the bankruptcy court's order lifting stay, if any, references the trial court's proceedings, if at all; and (4) if an automatic bankruptcy stay was in place during the pendency of the proceedings below, what impact that fact has on the trial court's judgment, if any. Adeleye v. Driscal , No. 14-14-00822-CV (Tex. App.-Houston [14th Dist.] Feb. 2, 2017, order).
The trial court thereafter held an evidentiary hearing during which a notice of bankruptcy and a bankruptcy discharge order were admitted as exhibits. The notice states that Adeleye filed for bankruptcy on January 1, 2013, and the discharge is dated July 10, 2015. The trial court issued an "Amended Order" including the following findings:
The Trial Court finds that a Petition for Bankruptcy was filed by Respondent, MR. TOKES TOSIN ADELEYE on JANUARY 1, 2013. The Trial Court finds that there was no notice of any stay, however, in the Notice of Bankruptcy, it states, "In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor [and] the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay." This Court finds that there was no stay as the 30 days had passed and no notice of stay was presented. The Bankruptcy Court did not lift the stay, nor reference the Trial Court's proceedings, however, the property in the Trial Court's division was not listed or contained in the bankruptcy filing. If an automatic stay was in place during the proceedings the Court would have stayed the proceedings. The Court *473 finds that the stay was in place and that would have precluded any further proceedings pending the lifting of the stay.
Upon receiving the Amended Order, we reinstated the appeal. Adeleye has also filed a mandamus complaining about the trial court's findings. We have consolidated the appeal and the mandamus for purposes of their resolution.
B. Discussion
We review the trial court's findings of fact regarding Adeleye's bankruptcy under the same legal and factual sufficiency standards used to review jury verdicts. Guggenheim Corp. Funding, LLC v. Valerus Compression Servs., L.P. , 465 S.W.3d 673, 685 (Tex. App.-Houston [14th Dist.] 2015, pet. denied) (citing City of Keller v. Wilson , 168 S.W.3d 802, 810-27 (Tex. 2005) for legal sufficiency standards and Cain v. Bain , 709 S.W.2d 175, 176 (Tex. 1986) (per curiam) for factual sufficiency standards). We review the trial court's legal conclusions de novo. BMC Software Belgium, N.V. v. Marchand , 83 S.W.3d 789, 794 (Tex. 2002).
The trial court's findings begin by confirming, as does the notice of bankruptcy admitted into evidence, that Adeleye filed for bankruptcy prior to the start of the divorce proceedings. The trial court further indicates that the bankruptcy court did not lift the stay to permit the divorce proceedings to take place, and the bankruptcy discharge order indicates that the bankruptcy proceedings did not end until after the trial court entered the divorce decree. It therefore appears that the automatic bankruptcy stay was in place during the entirety of the lower court proceedings in this case and that the trial court therefore had no power to render a judgment dividing the marital estate. See 11 U.S.C. §§ 362(a)(1) (providing that the filing of a bankruptcy petition automatically stays the commencement or continuation of any action against the debtor), 362(b)(2)(A)(iv) (explaining that the stay applies to divorce proceedings to the extent they seek to divide the marital estate); York v. State , 373 S.W.3d 32, 42 (Tex. 2012) ("As a matter of Texas law, a state court has no power to render a judgment in violation of the automatic stay under fundamental, constitutional law ....").
The trial court's Amended Order, however, appears to contain conflicting statements regarding whether the stay barred the proceedings below. The final sentence of the order proclaims that "the stay was in place and that would have precluded any further proceedings pending the lifting of the stay," but an earlier sentence suggests that "there was no stay as the 30 days had passed and no notice of stay was presented." In rectifying these inconsistent statements, we note that the reasoning provided in the second sentence (regarding the passage of 30 days and the lack of notice) was legally inconsequential. While a bankruptcy stay may be limited to 30 days under certain circumstances, see 11 U.S.C. § 362(c)(3)(A), there is no indication or finding that such circumstances existed in this case. Also, as we stated in our prior opinion of April 28, 2016 and order of February 2, 2017, it does not matter whether a party or the court learns of the bankruptcy action prior to taking action against the debtor, such action is stayed during the pendency of the bankruptcy proceedings unless permitted by the bankruptcy court. Adeleye , 488 S.W.3d at 499 (citing In re Small , 286 S.W.3d 525, 530 (Tex. App.-Houston [14th Dist.] 2009, orig. proceeding), and Darr v. Altman , 20 S.W.3d 802, 806-07 (Tex. App.-Houston [14th Dist.] 2000, no pet.) ). There is no indication in this case that the bankruptcy court authorized the divorce proceedings to go forth; indeed, the trial court found *474 that the bankruptcy court did not even reference this divorce action.[3]
The trial court's division of the marital estate in this case was void because it occurred in violation of the automatic bankruptcy stay. See, e.g., Howell v. Thompson , 839 S.W.2d 92, 92 (Tex. 1992) ; Small , 286 S.W.3d at 530. However, because the trial court's determination that a valid marriage existed between Adeleye and Driscal and dissolution of that marriage are unaffected by the bankruptcy stay, see 11 U.S.C. § 362(b)(2)(A)(iv), we will now turn to Adeleye's jurisdictional issues.
II. Jurisdictional Issues
Adeleye's issues raising jurisdictional concerns include his sixth issue, challenging Driscal's standing and capacity, and his eighth issue, challenging the trial court's personal jurisdiction over him.
A. Standing & Capacity
In order to bring a lawsuit, a party must have standing and capacity. Standing concerns whether a party has a sufficient relationship with the lawsuit to have a justiciable interest in its outcome. Austin Nursing Ctr., Inc. v. Lovato , 171 S.W.3d 845, 848 (Tex. 2005). The standing doctrine requires that there be (1) a real controversy between the parties that (2) will be resolved by the judicial declaration sought. Id. at 849. In the absence of standing, a trial court lacks subject matter jurisdiction to hear the case. Id. Capacity concerns the personal qualifications of a party to litigate. Id. at 848. A party has capacity when it has the legal authority to act. Id. at 848-49. "Implicit in these requirements is that litigants are 'properly situated to be entitled to [a] judicial determination.' " Id. at 849 (quoting 13 Fed. Prac. & Proc. Juris. § 3531, at 338-39 (2d ed. 1984) ).
Adeleye's standing and capacity arguments under his sixth issue are both premised on his assertion that in filing the lawsuit, Driscal represented herself as having a false name ("Margaret Driscal"), birth date ("10/26/56"), and country of origin ("Nigeria"). Adeleye claims that Driscal's real name is Margaret Egun and that she was born in Jamaica on November 26, 1956.
We first note that Adeleye's argument appears more in line with an allegation of misnomer than standing or capacity. A misnomer occurs when a party misnames itself or another party, but the correct parties are involved in the lawsuit. In re Greater Houston Orthopaedic Specialists, Inc. , 295 S.W.3d 323, 325 (Tex. 2009). Whether raised as standing, capacity, or misnomer, key assumptions underlying Adeleye's arguments are not supported by the record. It is undisputed that Driscal is the person alleging she was married to Adeleye. As will be discussed more fully below, Driscal testified at length regarding her connection to Adeleye, and this testimony was supported by documentary evidence as well as the testimony of Adeleye's brother and Adeleye himself, who acknowledged many of the connections alleged by Driscal, though he denied a legally valid marriage existed.
*475 The only evidence Adeleye cites in support of his contention that Driscal is not who she claims to be are the birth certificates of the couple's three children.[4] All three certificates show the mother's maiden name to be "Margaret Egun." The third additionally shows her then current name to be "Margaret Driscal," the same name used in this lawsuit. Driscal explained that "Egun" was her maiden name and "Driscal" was the name she took when Adeleye arranged a sham marriage for her to a man named Marvin Driscal. There is, therefore, no actual discrepancy in the names.
Regarding the apparent discrepancies in Driscal's birth date and country of birth as occurred in her testimony and recorded on the children's birth certificates, Driscal stated simply that the certificates contained errors. No other evidence was submitted on the questions of her birth date and country. Adeleye provides no cogent argument, and we can discern none, that the birth date and country discrepancy impair Driscal's capacity or standing to bring this lawsuit. As stated, there is no dispute that she is the person alleging to have been married to Adeleye at the time of trial, regardless of whether she was born in October or November or in Nigeria or Jamaica. There was a real controversy between the parties that was resolved through this lawsuit and no evidence establishes that Driscal lacked capacity. See Austin Nursing Ctr. , 171 S.W.3d at 848-49. Accordingly, we overrule Adeleye's sixth issue.
B. Personal Jurisdiction
In issue eight, Adeleye contends that the trial court lacked personal jurisdiction over him as a nonresident of Texas.[5] Challenges to a trial court's personal jurisdiction are reviewed de novo. Aduli v. Aduli , 368 S.W.3d 805, 813 (Tex. App.-Houston [14th Dist.] 2012, no pet.). Unlike subject matter jurisdiction, a court's lack of personal jurisdiction over a party can be waived. Trenz v. Peter Paul Petroleum Co. , 388 S.W.3d 796, 800 (Tex. App.-Houston [1st Dist.] 2012, no pet.) ; Arnold v. Price , 365 S.W.3d 455, 458 (Tex. App.-Fort Worth 2011, no pet.).
A party wishing to challenge personal jurisdiction must either make a special appearance or abstain from the proceedings and wait to collaterally attack the judgment when the opposing party seeks to enforce it. See Global Paragon Dallas, LLC v. SBM Realty, LLC , 448 S.W.3d 607, 612-13 (Tex. App.-Houston [14th Dist.] 2014, no pet.) ;
*476 Yuryeva v. McManus , No. 01-12-00988-CV, 2013 WL 6198322, at *4 (Tex. App.-Houston [1st Dist.] Nov. 26, 2013, pet. denied) (mem. op.); see also Tex. R. Civ. P. 120a (governing special appearances). A special appearance must be filed before a motion to transfer venue or any other plea, pleading, motion, or filing that makes a general appearance. Tex. R. Civ. P. 120a(1). A respondent waives the right to challenge personal jurisdiction if he or she makes a general appearance. Exito Elecs. Co., Ltd. v. Trejo , 142 S.W.3d 302, 304-05 (Tex. 2004) ; Yuryeva , 2013 WL 6198322, at *4.
Adeleye did not enter a special appearance below challenging the trial court's personal jurisdiction over him. Although in his apparent answer, entitled Defendant's Response and Defense to Alleged Marriage, Adeleye represented that he had never resided with Driscal or in Texas, these references appear aimed at denying elements of a common law marriage and do not specifically challenge personal jurisdiction. Appellant does not cite to any other place in the record where he filed a special appearance. Additionally, in his answer, Adeleye requested that the trial court deny Driscal's petition for divorce and order the return of all of his personal and real property from Driscal. See Arnold , 365 S.W.3d at 459 (explaining that requesting affirmative relief inconsistent with an assertion that a court lacks jurisdiction constitutes a general appearance) (citing Dawson-Austin v. Austin , 968 S.W.2d 319, 322 (Tex. 1998) ). Adeleye made a general appearance and fully participated in the trial; accordingly, he waived any complaint regarding personal jurisdiction. See Exito Elecs. , 142 S.W.3d at 304-05 ; Yuryeva , 2013 WL 6198322, at *4 ; see also Tex. R. Civ. P. 120a(1) ("Every appearance, prior to judgment, not in compliance with this rule is a general appearance."); Morris v. Morris , 894 S.W.2d 859, 862 (Tex. App.-Fort Worth 1995, no pet.) (explaining that filing an answer without challenging jurisdiction constituted a general appearance).[6] We therefore overrule his eighth issue.
III. Substantive Issues
We next turn to Adeleye's issues challenging the sufficiency of the evidence and raising other related matters. We will begin by recounting the evidence adduced at trial.
A. The Evidence at Trial
Driscal testified that she and Adeleye were married in a traditional Nigerian ceremony on May 18, 1984, even though neither party to the marriage was present at the ceremony. Driscal explained that the custom in Nigeria is for the man to tell his family who he wants to marry, then his family writes to the woman's family to ask for her hand in marriage, and dates are arranged for a ceremony. She introduced into evidence a letter from Adeleye's brother to her father, in which the brother stated that Adeleye wished to marry Driscal and requested the father's approval of their marriage. Driscal stated that they met in 1981 and dated for two years before the wedding. She was pregnant at the time of the wedding, and they had begun living together before the ceremony took place.
Driscal further testified that she and Adeleye had three children together. Adeleye is shown as the father on two of the children's birth certificates, but on the *477 third certificate, it shows Marvin Driscal as the father. Driscal stated that this is not correct, Adeleye is the child's father, and the child has always known him to be her father, but Driscal had not managed to have the certificate changed.[7] According to Driscal, Adeleye arranged for Driscal to marry Adeleye's co-worker, Marvin, in 1985 so that she could get a "green card" and United States citizenship and then later help him to do the same.[8] Driscal stated that she had no relationship with Marvin apart from the sham marriage, never lived with him, never consummated the marriage, never held herself out as being married to him, and only met him on one occasion. She further stated that she did not follow through with the plan to get a green card and Marvin died in 2004.
Driscal additionally testified that she and Adeleye moved to the Atlanta, Georgia area in 1983 before moving to the Houston area in 1997. She said that they came to Houston together, found a house together, and moved in together. She further represented that they lived together throughout their marriage, although Adeleye went back and forth between Atlanta and Houston for business reasons. They held themselves out to friends and family as being married, and Adeleye regularly gave her or her third daughter checks to pay for the household expenses and bills. A series of such checks for various amounts was introduced into evidence.
During cross-examination, Driscal admitted that, although she represents herself to be Margaret Modupe Driscal, born October 26, 1956 in Nigeria, she is listed on her children's birth certificates as having the maiden name of Margaret Modupe Egun, born on November 26, 1956 in Jamaica. Although Driscal started to explain this discrepancy a couple of times, she never completed an explanation on the record. Driscal also was asked about two letters from friends sent in June 1984, remarking on her "engagement." Driscal explained that an "engagement" in Nigeria is a traditional wedding ceremony and not merely a promise to marry as in the United States.
Michael Ejah testified that he is an expert in Nigerian weddings, is licensed to practice law in both Nigeria and New York, and practiced for eight years in Nigeria with a specialty in, among other things, family law. He further stated that he has "a good deal of knowledge" regarding Nigerian weddings and still works on immigration-related family law cases in Nigeria. The trial judge permitted Ejah to testify as an expert on Nigeria weddings. Ejah testified that Driscal and Adeleye had a marriage under Nigerian "native law and custom" and that such marriages are recognized as valid in the United States. He specifically stated that in his immigration law practice, he has used such marriages as valid marriages and they have been accepted by the United States. He cited chapter 2 of the United States Citizenship and Immigration Service Policy Manual as recognizing customary law and "customary law by proxy" marriages. He explained that "customary law by proxy" marriages occur when the parties to the marriage are not physically present for the wedding ceremony. He said that in such cases, the families of the couple meet and agree on a "bride price" to be paid by the groom, and then family members or personal representatives of both sides, along with two witnesses, meet. Once the meeting *478 has occurred, the couple is legally married in Nigeria and the marriage will be recognized in the United States. He further stated that for immigration purposes or to get a driver's license, an affidavit was acceptable proof of the marriage; however, no documentation was required to prove up the marriage. Lastly, Ejah testified that he and his wife were married by proxy in Nigeria.
Sanya Adeleye testified that he is Adeleye's brother. According to Sanya, Driscal and Adeleye had what is called an "engagement" in Nigeria on May 18, 1984, but he further explained that "engagement" is what a traditional wedding is called in Nigeria. Sanya said that he attended the ceremony along with a total of 50 to 80 people, representing both parties to the wedding. He said that his family recognizes Driscal and Adeleye as married, the couple held themselves out to Sanya as being married, and they lived together, had three children together, and have had a house together in the Houston area since 2006 or 2007. Sanya said that he has seen them together in Houston many times and has visited Adeleye at his Houston-area home several times. He stated that he knows Driscal as "Dupe Margaret Egun Driscal." At the time of the wedding, her last name was Egun. He acknowledged, however, that he had never asked why she used the name Driscal and had never specifically seen "Adeleye" used as her last name. Sanya additionally said that he did not know if a dowry was paid to Driscal's family and he had never heard of anyone named Michelle James.
Adeleye, who represented himself pro se, testified in narrative form, stating that he married Michelle James in 1981 and divorced her in 1998. He supported this assertion with a decree from a Georgia court, granting the divorce in 1998 but failing to state when the marriage began. According to Adeleye, he told Driscal that he could not marry her in 1984 because he was already married to James and that an "engagement" was only a promise to marry. Adeleye further attested that Driscal's maiden name was Egun and that she was trying to conceal her identity because she was a fugitive from Georgia. He alleged that under Nigerian law, both parties must agree to be married and he did not agree to marry Driscal.
In its final decree, the trial court found that a valid marriage occurred between Driscal and Adeleye in Nigeria on May 18, 1984. The trial court further dissolved the marriage and divided the marital estate.[9]
B. Expert Testimony
In his second issue, Adeleye contends that the trial court erred in allowing Driscal's expert on Nigerian marriage, Michael Ejah, to testify despite the fact he was not timely identified as an expert witness, citing Texas Rule of Civil Procedure 193.6(a). Under that rule, a party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce the testimony of a witness (other than a party) who was not timely identified, unless the court finds there was good cause for the failure or the failure did not unfairly surprise or prejudice another party. Id. ; Lopez v. La Madeleine of Tex., Inc. , 200 S.W.3d 854, 860 (Tex. App.-Dallas 2006, no pet.).
*479 However, in order to have preserved this issue for appellate review, Adeleye needed to have made a timely request, objection, or motion in the trial court, stating the grounds for the ruling sought, and obtained a ruling on the request, objection, or motion. See Tex. R. App. P. 33.1(a) ; Young v. Terral , No. 01-14-00591-CV, 2015 WL 8942625, at *4-5 (Tex. App.-Houston [1st Dist.] Dec. 8, 2015, no pet. h.) (mem. op.); Levine v. Steve Scharn Custom Homes, Inc. , 448 S.W.3d 637, 656 (Tex. App.-Houston [1st Dist.] 2014, pet. denied). The record reflects that, when Driscal sought to introduce Ejah's testimony, Adeleye said simply, "I don't know anything about this expert witness." Driscal's attorney responded that he had given Adeleye "a list" and Ejah's name was on the list.[10] Adeleye did not make any further complaint, did not deny that he received the list mentioned by Driscal's attorney, and did not make any specific request, objection, or motion based on a lack of proper disclosure. Moreover, since no request, objection, or motion was made, the trial court did not make any rulings regarding timely disclosure of the witness. Accordingly, Adeleye has failed to preserve this issue for appellate review. We therefore overrule his second issue.[11]
C. Foreign Law
In issue three, Adeleye argues that the trial court erred in its consideration of foreign law because Driscal failed to provide proper notice of her intention to offer evidence on Nigerian law and failed to provide sufficient evidence to establish the laws of Nigeria, citing Texas Rule of Evidence 203. Under Rule 203, in determining foreign law, a court may consider "any material or source," including affidavits, testimony, briefs, and treatises. Tex. R. Evid. 203[12] ; see also Cal Dive Offshore Contractors, Inc. v. Bryant , 478 S.W.3d 914, 921 (Tex. App.-Houston [14th Dist.] 2015, no pet.). A party who intends to raise an issue based on foreign law, however, is required to provide "notice in the pleadings or 'other reasonable written notice.' " PennWell Corp. v. Ken Assocs., Inc. , 123 S.W.3d 756, 760 (Tex. App.-Houston [14th Dist.] 2003, pet. denied).
Adeleye appears to argue that Driscal did not provide proper, reasonable notice of her intention to use foreign law. Adeleye, however, does not cite, and we have been unable to find, where he preserved this objection by making it in the trial court. See Tex. R. App. P. 33.1(a) (requiring preservation of complaints made on appeal); Phillips v. United Heritage Corp. , 319 S.W.3d 156, 164 (Tex. App.-Waco 2010, no pet.) (holding party's failure to attempt to limit court's consideration of laws of Turks and Caicos Islands under Rule 203 forfeited right to complain on appeal regarding related evidence); Dankowski v. Dankowski , 922 S.W.2d 298, 302-03 (Tex. App.-Fort Worth 1996, writ denied) (holding failure to object to admission of affidavit *480 based on Taiwanese divorce law waived any objection to its consideration); see also Cal Dive Offshore , 478 S.W.3d at 921 (holding failure to obtain ruling or object to failure to rule on motion to strike waived argument regarding admission of English legal materials).[13] Because Adeleye failed to preserve the notice issue for our review, we will not address the merits of this complaint.
Adeleye additionally argues that Driscal failed to present sufficient evidence regarding Nigerian law for the court to accurately determine the requirements of that law, and consequently, the court should have assumed the law of Nigeria is the same as the relevant law of Texas, citing In re Estates of Garcia-Chapa , 33 S.W.3d 859, 863 (Tex. App.-Corpus Christi 2000, no pet.) ("In the absence of a pleading or proof of law from another jurisdiction or a motion to take judicial notice of the laws of another jurisdiction, laws of other jurisdictions are presumed to be the same as those of Texas.") (citing Gevinson v. Manhattan Const. Co. of Okla. , 449 S.W.2d 458, 465 n.2 (Tex. 1969) ). Adeleye, however, does not provide any analysis of the evidence presented on Nigerian law or expressly state what he believes was lacking from that evidence in order to establish the substance of the law. See Tex. R. App. P. 38.1(i) (requiring that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). As set forth above, Driscal's expert, Michael Ejah, explained his qualifications, described the process and requirements for a Nigerian customary law by proxy marriage, and averred that such marriages were recognized as valid in both Nigeria and the United States. This evidence was further supported by the testimony of Driscal and Sanya, who, while not experts themselves, expressed familiarity with such weddings. The evidence was sufficient to support the trial court's determination of Nigerian law under the circumstances of this case. See, e.g., Dankowski , 922 S.W.2d at 303 (holding affidavit of Taiwanese attorney supported trial court's determination that parties had not been validly divorced under the laws of Taiwan). Accordingly, we find no merit in Adeleye's arguments and overrule his third issue.
D. Factual Sufficiency
We next turn to the factual sufficiency of the evidence, which Adeleye challenges in his first and fifth issues. When, as here, an appellant challenges factual sufficiency on an issue for which he did not have the burden of proof, we consider all of the evidence in a neutral light and set aside the judgment only if the evidence that supports the challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust. Cain v. Bain , 709 S.W.2d 175, 176 (Tex. 1986). The fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. See Golden Eagle Archery, Inc. v. Jackson , 116 S.W.3d 757, 761 (Tex. 2003).
We begin our analysis by noting that much of Adeleye's arguments are premised on evidence not introduced and positions not taken below. For example, Adeleye cites the Nigerian Marriage Act as well as several Nigerian court cases, and based on these authorities, he argues that Driscal lacked capacity to enter a Nigerian customary marriage because she was allegedly *481 born in Jamaica.[14] Adeleye failed, however, to raise this issue during trial, much less provide the court with the law he now cites. See Cal Dive Offshore , 478 S.W.3d at 920-21 (explaining that the determination of foreign law is an evidentiary matter and a party seeking the application of foreign law must provide the court with the necessary information). He further asserts that Georgia law should apply because the couple was domiciled in Georgia at the time of the alleged Nigerian wedding, but he did not urge the court below to apply Georgia law or request the court take judicial notice of the laws of Georgia. See Tex. R. Evid. 202 (governing judicial notice of other state's law).[15]
Adeleye argues further that an engagement is not a marriage, he lacked the requisite intent to marry Driscal, and the evidence was inconsistent regarding when the alleged wedding ceremony occurred. Driscal and Sanya, however, both testified that a wedding in Nigeria is often referred to as an "engagement," and the trial court was within its authority as factfinder to accept their testimony on that issue and reject Adeleye's statements to the contrary. See Villalpando v. Villalpando , 480 S.W.3d 801, 807 (Tex. App.-Houston [14th Dist.] 2015, no pet.). Adeleye's intent to marry Driscal was inferable by the trial judge from the other evidence establishing that a wedding took place. See Twyman v. Twyman , 855 S.W.2d 619, 623 (Tex. 1993). And, any inconsistency regarding the date was likewise a matter for the trial judge to resolve as factfinder. See Saba Zi Expl., L.P. v. Vaughn , 448 S.W.3d 123, 136 (Tex. App.-Houston [14th Dist.] 2014, no pet.).
Next, Adeleye argues that his prior marriage, to Michelle James in 1981, was an impediment to the alleged marriage between himself and Driscal in 1984. See Tex. Fam. Code § 6.202 ("A marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse."); see also Nguyen v. Nguyen , 355 S.W.3d 82, 89 (Tex. App.-Houston [1st Dist.] 2011, pet. denied) (citing section 6.202 ). The Texas Family Code, however, also contains a presumption that: "When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes the most recent marriage until one who asserts the validity of a prior marriage proves the validity of the prior marriage." Tex. Fam. Code § 1.102. Therefore, Adeleye, as the proponent of the prior marriage to James, had the burden of proving the validity of that marriage. See In re A.M. , 418 S.W.3d 830, 842 (Tex. App.-Dallas 2013, no pet.). The presumption favoring the more recent marriage is a particularly strong one and may even outweigh positive evidence to the contrary. See Nguyen , 355 S.W.3d at 89. Its strength increases the longer the later marriage exists, when the parties to the later marriage hold themselves out as being married, and with the birth of children of the later marriage. Id.
*482 Adeleye testified that he married James in 1981. He further introduced into evidence a one-page divorce decree from a Georgia court dated in 1998 but not showing when the marriage commenced. Driscal testified that she learned in 1985, after she married Adeleye and bore the couple's first child, that Adeleye had previously married. She did not state the name of the person Adeleye allegedly married before her or whether that marriage had been dissolved prior to her marriage to Adeleye. While the divorce decree is some evidence that Adeleye was married to James as of 1998, it does not establish that he married James prior to his marriage to Driscal. Although Adeleye himself testified that his marriage to James preceded the alleged marriage to Driscal, the trial court was free to discount this self-serving testimony. Gurka v. Gurka , 402 S.W.3d 341, 348-49 (Tex. App.-Houston [14th Dist.] 2013, no pet.). Additionally, significant evidence indicated that Adeleye and Driscal had been married for 30 years, held themselves out as being married, and had three children together. Driscal and Sanya's testimony supported all three conclusions, and Adeleye himself acknowledged the couple had children together. Based on this evidence and the operation of the section 1.102 presumption, it was reasonable for the trial court to have concluded that Adeleye's alleged marriage to James was not an impediment preventing his marriage to Driscal.
Adeleye next attempts to use the section 1.102 presumption in his favor. In his fifth issue as well as his first, he contends that the presumption should have controlled the outcome of this case because Driscal herself admitted that she married Marvin in 1985, after her alleged marriage to Adeleye; thus, Adeleye concludes, the marriage to Marvin should be presumed to be the valid marriage. As the proponent of the earlier marriage, it was Driscal's burden to overcome the strong presumption favoring the latter marriage. See In re A.M. , 418 S.W.3d at 842. This presumption continues until a party proves the impediment of a previous marriage and its continuing validity. Id. Driscal's evidence concerning her marriage to Adeleye was significantly stronger than Adeleye's proof of his marriage to James. Driscal presented Ejah as an expert on Nigerian matrimonial law, and he testified regarding the requirements and validity of a Nigerian "customary law by proxy" marriage. He explained that such marriages occur when the parties to the marriage are not physically present for the wedding ceremony. Instead, the families of the couple meet and agree on a "bride price," and then family members or personal representatives of both sides must meet along with two witnesses for the marriage to take place. Ejah stated that such marriages are recognized as valid in the United States, and he cited chapter 2 of United States Citizenship and Immigration Service Policy Manual as recognizing customary law and "customary law by proxy" marriages.
Driscal's own testimony generally supported Ejah's regarding customary law by proxy marriages. Driscal further testified that she and Adeleye were married in a traditional Nigerian ceremony on May 18, 1984. She produced a letter from Adeleye's brother to her father, in which the brother stated Adeleye wished to marry Driscal and requested the father's approval of their marriage. Driscal explained that this was the customary way for such marriages to be arranged.[16] Driscal testified about *483 two letters from her friends congratulating her on the couple's "engagement," which she explained referred to a wedding in Nigeria.[17] Driscal further testified the couple lived together, moved together, found and bought a home in the Houston area together, had three children, and held themselves out as being married. There was no evidence that the marriage between Adeleye and Driscal had been dissolved. Driscal described her marriage to Marvin as a sham arranged by Adeleye in order to obtain a green card. She says she only met Marvin once, the marriage was not consummated, and she was told Marvin had subsequently died.
Adeleye's brother, Sanya, also testified in support of Driscal's claims. He stated that he attended the couple's traditional wedding in Nigeria on May 18, 1984, and that representatives of both sides of the marriage were in attendance. He further said that his family recognizes Driscal and Adeleye as being married, the couple held themselves out to Sanya as being married, and they lived together, had three children together, and have had a house together in the Houston area since 2006 or 2007. Sanya further insisted that he has seen them together in Houston many times and has visited Adeleye at his Houston area home several times.
This evidence was sufficient for the trial court to conclude that Driscal's marriage to Adeleye was valid and existing at the time the divorce action was filed. The one element of a customary law by proxy marriage that Driscal failed to present direct evidence on was the requirement of a dowry or "bride price" being agreed to and paid. Both Ejah and Sanya mentioned this requirement, but no one testified specifically that such requirement had or had not been met. However, the strength of the evidence regarding the wedding and resulting marriage appears such that the trial court could have reasonably inferred that the requirement was fulfilled or excused. Both Driscal and Sanya would have been in a position to know whether the dowry was paid and they provided direct testimony in support of other elements; thus, their testimony that the marriage occurred provides a strong inference that the dowry requirement was met. See, e.g., Smith v. Colonial Grp., Inc. , No. 10-05-00354-CV, 2006 WL 3028084, at *2 (Tex. App.-Waco Oct. 25, 2006, no pet.) (mem. op.); Brookshire Bros. v. Lewis , 997 S.W.2d 908, 918 (Tex. App.-Beaumont 1999, pet. denied) ; In re Thoma , 873 S.W.2d 477, 505 (Tex. Rev. Trib. 1994, no appeal).
Based on the foregoing analysis, we cannot say that the evidence supporting the challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust. See Cain , 709 S.W.2d at 176. Accordingly, we overrule Adeleye's first and fifth issues.[18]
E. Judgment and Pleadings
In his fourth issue, Adeleye contends the trial court erred in granting a judgment that did not conform to the pleadings in *484 the absence of trial by consent. In particular, Adeleye complains that while Driscal's live pleading alleged the couple was married, it did not specifically allege a Nigerian customary law by proxy marriage.
Under Texas Rule of Civil Procedure 301, a judgment must conform to the pleadings. Tex. R. Civ. P. 301. A judgment unsupported by pleadings is generally void. In re Estate of Gaines , 262 S.W.3d 50, 60 (Tex. App.-Houston [14th Dist.] 2008, no pet.). However, issues not raised in the pleadings can be tried by express or implied consent of the parties. Tex. R. Civ. P. 67 ; Flowers v. Flowers , 407 S.W.3d 452, 457 (Tex. App.-Houston [14th Dist.] 2013, no pet.). To determine whether an issue was tried by consent, we examine the record not for evidence of the issue, but rather for evidence that the issue was tried. Flowers , 407 S.W.3d at 458. The unpleaded issue may be deemed tried by consent when the evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested. See Ingram v. Deere , 288 S.W.3d 886, 893 (Tex. 2009) ("When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived."). An issue is not tried by consent when the evidence relevant to the unpleaded issue is also relevant to a pleaded issue because admitting that evidence would not be calculated to elicit an objection and its admission ordinarily would not prove the parties' "clear intent" to try the unpleaded issue. Case Corp. v. Hi-Class Bus. Sys. of Am., Inc. , 184 S.W.3d 760, 771 (Tex. App.-Dallas 2005, pet. denied). The trial court has broad discretion to determine whether an unpleaded issue was tried by consent. See RR Maloan Invs., Inc. v. New HGE, Inc. , 428 S.W.3d 355, 363 (Tex. App.-Houston [14th Dist.] 2014, no pet.).
Pleadings must give reasonable notice of the claims asserted. SmithKline Beecham Corp. v. Doe , 903 S.W.2d 347, 354-55 (Tex. 1995). As a reviewing court, we are to liberally construe a petition to contain any claims that reasonably may be inferred from the specific language used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. Flowers , 407 S.W.3d at 458. In making this determination, however, we cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. Moneyhon v. Moneyhon , 278 S.W.3d 874, 878 (Tex. App.-Houston [14th Dist.] 2009, no pet.).
In her First Amended Original Petition, Driscal alleged that she and Adeleye were married on or about May 18, 1984 in Nigeria. She did not specify what manner of marriage occurred on that date. In the alternative, she also alleged that she and Adeleye became common law married in the United States. The judgment recites that "the parties were married in NIGERIA, on MAY 18, 1984" and that "the pleadings of Petitioner are in due form and contain all the allegations, information and prerequisites required by law." While Adeleye is correct that Driscal's pleading does not specifically reference that the Nigerian marriage was a customary law by proxy marriage, he does not cite any authority or make any express argument that such specificity regarding the type of marriage ceremony is required under Rule 301. The closest case Adeleye cites is In re S.A.A. , in which the judgment granted a divorce on grounds of adultery when that ground had not been pleaded. 279 S.W.3d 853, 856 (Tex. App.-Dallas 2009, no pet.). Here, Driscal pleaded a marriage took place in Nigeria on a certain date and the judgment held that the alleged marriage was valid. In re S.A.A. does not in any way *485 suggest that Driscal's pleading was deficient. Accordingly, we find no merit in Adeleye's contention that the judgment did not conform to the pleadings in this case.[19]
Moreover, even if additional specificity was required, the proxy marriage issue was tried by consent. Adeleye makes two arguments as to why this was not the case. First, he contends that he objected when evidence was introduced regarding a proxy marriage; second, he contends that the evidence pertaining to a customary marriage was also relevant to Driscal's alternative pleading for a common law marriage. Our review of the record reveals that both points are inaccurate. Driscal herself, her expert, Michael Ejah, and Adeleye's brother, Sanya, all testified regarding the requirements for and the facts supporting a customary law by proxy marriage between Driscal and Adeleye. It was indeed a primary focus of much of the trial, with Driscal and her witnesses insisting the ceremony occurred and resulted in a valid marriage and Adeleye denying anything more than an engagement that did not equate to or result in a valid marriage. The judge even made a point of saying that she wanted the issue of whether a wedding had taken place resolved first before the parties put on evidence regarding property, and Adeleye thanked the judge for giving him the opportunity to disprove a wedding occurred.
Adeleye points to only one place where he objected to the considerable evidence related to the issue of proxy marriage. This objection came well into Ejah's testimony-the second witness to testify on the issue-and it was based on the hearsay rule and the question of whether the parties to the marriage needed to be present at the ceremony. Adeleye points to no place in the record, and we have discovered none, where he objected or otherwise complained that the issue of a customary law by proxy marriage had not been pleaded.[20] Additionally, Adeleye's assertions that the evidence pertaining to elements of a customary marriage are the same as the elements of a common law marriage and admission of evidence as to one theory was not acquiescence to admission as to the other do not account for the extensive evidence regarding the import and fact of the Nigerian ceremony. That evidence was relevant only to the issue of proxy marriage. In short, the record demonstrates the proxy marriage issue was developed without objection under circumstances indicating both parties understood the issue was being contested; it was therefore tried by consent. See Ingram , 288 S.W.3d at 893. We overrule Adeleye's fourth issue.
IV. Conclusion
Having overruled each of Adeleye's issues challenging the trial court's finding that a valid marriage existed between Adeleye and Driscal, we affirm the trial court's decree to the extent that it recognizes and *486 dissolves that marriage. However, because the trial court's division of the marital estate was void due to the automatic bankruptcy stay generated by Adeleye's bankruptcy filing, we reverse and remand the remainder of the decree for division of the marital estate. We further deny as moot Adeleye's petition for mandamus.

For reasons that will become clear, we will not address the merits of Adeleye's seventh issue, which challenges the award of certain property to Driscal.

This case first appeared in our court as a direct appeal by Adeleye, but after we remanded the case to the trial court and the trial court held further proceedings, Adeleye filed a petition for mandamus. We have consolidated these two proceedings, appeal and mandamus, and resolve all pending issues in this opinion and accompanying judgment.

We additionally note that the trial court's statement, "If an automatic stay was in place during the proceedings the Court would have stayed the proceedings," also seems to be in support of its conclusion that there was no stay in place. However, this statement begs the question as to whether the trial court knew about the stay. And regardless, as explained above, the automatic bankruptcy stay is just that: automatic. A divorce court need not itself issue a stay for proceedings in that court to be stayed by a bankruptcy filing. See 11 U.S.C. §§ 362(a)(1), (b)(2)(A)(iv) ; Small , 286 S.W.3d at 530.

Adeleye does not dispute that the three children are his biological daughters with Driscal; indeed, he referred to at least one of them as his daughter during trial.

Adeleye cites section 6.305 of the Texas Family Code, which governs jurisdiction over nonresident respondents in divorce proceedings. Tex. Fam. Code § 6.305. That section states as follows:
(a) If the petitioner in a suit for dissolution of a marriage is a resident or a domiciliary of this state at the time the suit for dissolution is filed, the court may exercise personal jurisdiction over the respondent or over the respondent's personal representative although the respondent is not a resident of this state if:
(1) this state is the last marital residence of the petitioner and the respondent and the suit is filed before the second anniversary of the date on which marital residence ended; or
(2) there is any basis consistent with the constitutions of this state and the United States for the exercise of the personal jurisdiction.
(b) A court acquiring jurisdiction under this section also acquires jurisdiction over the respondent in a suit affecting the parent-child relationship.
Id.

The fact that personal jurisdiction in this case was potentially governed by Family Code section 6.305, see supra n.5, did not relieve Adeleye from compliance with Rule 120a. See Dawson-Austin , 968 S.W.2d at 321-26 (assessing compliance with Rule 120a in case governed by section 6.305 ); Church v. Quick , No. 14-08-00131-CV, 2009 WL 2013799, at *2-3 (Tex. App.-Houston [14th Dist.] July 14, 2009, no pet.) (mem. op.) (same).

As mentioned above, Adeleye acknowledged to the trial judge that he and Driscal had three daughters together and specifically that he is the father of the third child.

Driscal testified that Adeleye had "previously" married someone in order to get a green card but was unsuccessful and was asked to leave the country.

After Adeleye's testimony, the trial judge held that a valid marriage existed and requested the parties put on additional evidence regarding the proper division of marital assets. Because the trial court's renditions regarding the marital estate were void due to Adeleye's pending bankruptcy proceedings, we need not recount the asset-related evidence in this appeal.

In his brief, Adeleye states that he did not receive notice of Ejah's testimony until the day of trial. However, in response to Adeleye's post-judgment motion for reconsideration, Driscal's attorney supplied a copy of her First Amended Designation of Fact and Expert Witnesses, which lists Ejah as an expert on Nigerian weddings. The designation contains a certificate of conference and attaches a facsimile cover sheet and facsimile log showing delivery to Adeleye on July 11, 2014. Trial began on September 23, 2014.

Adeleye also did not object when Ejah's résumé was offered into evidence. Adeleye took Ejah on voir dire regarding his qualifications as an expert on Nigerian weddings, but he does not renew that attack on appeal.

Rule 203 was amended effective April 1, 2015, after the trial below. Citation is to the rules as they existed at the time of trial in September 2014.

Interestingly, during the hearing on temporary orders in this case, Adeleye himself presented a purported expert on Nigerian matrimonial law but Driscal did not. In the final trial, those positions became reversed.

Although Driscal repeatedly insisted she was from Nigeria, the birth certificates of her three children show her birthplace as Jamaica.

Adeleye additionally challenges the sufficiency of the evidence to support the existence of a common law marriage under Texas law. Driscal had alleged a common law marriage in her pleadings as an alternative to her allegation that the couple was wed under Nigerian custom law. Because the trial court found that the couple was married in the Nigerian wedding ceremony, we need not address Adeleye's arguments regarding common law marriage.

Adeleye asserts that he objected to the Nigerian documents as they could not be authenticated. In support of this contention, he cites his pleadings, wherein he raised the issue of authenticity. Appellant, however, apparently did not seek or receive a pre-trial ruling on this complaint, and he stated he had no objection when the supposed letter from his brother was admitted at trial.

These letters were offered into evidence by Adeleye during his cross-examination of Driscal.

In his reply brief, Adeleye suggests that he intended in this appeal to challenge the legal sufficiency of the evidence and not just the factual sufficiency of the evidence. To the extent Adeleye's first issue challenges the legal sufficiency of the evidence, we overrule that contention for the same reasons expressed above regarding factual sufficiency. See City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005) (addressing standards of review for legal sufficiency of the evidence).

Adeleye additionally argues that the judgment did not conform to the pleadings because while the live petition only references Driscal by the name "Margaret Modupe Driscal," the judgment references her by that name as well as "Margaret Modupe Egun." As discussed in detail above, the latter was Driscal's maiden name. The only time the judgment uses her maiden name is when it states on page 1, "MARGARET MODUPE DRISCAL, Petitioner, also know[n] as MARGARET MODUPE EGUN." This brief extra verbiage did not constitute resolution of an unpleaded issue or cause the judgment to not conform to the pleadings.

Our review of the record reveals one other objection to testimony regarding the proxy marriage. When Sanya first began to testify, Adeleye objected on the ground that a marriage did not take place. He did not, however, argue that the matter was not raised in the pleadings.