

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00119-CV

## IN THE MATTER OF THE MARRIAGE OF
## MELISSA MARIE CONE AND JOSHUA JOSEPH CONE
## AND IN THE INTEREST OF A.J.C., A CHILD,

**From the 335th District Court
Burleson County, Texas
Trial Court No. 27,125**

## MEMORANDUM OPINION

In four issues, Appellant Joshua Joseph Cone challenges the trial court's order regarding the amount he was ordered to pay in child support and the failure to properly credit him in the division of the marital estate. We will affirm.

### Background

This is the second appeal in this divorce proceeding. In Case Number 10-14-00179-CV, Joshua appealed the trial court's ruling that Joshua could not testify if he elected to plead the Fifth Amendment regarding criminal charges pending against him. We affirmed that part of the trial court's final decree that granted a divorce, but reversed the

decree in part as it related to all other issues, including child custody and child support, as well as the division of the marital estate.

Joshua and Melissa were married in December 2010 in Washington State. They have one child, A.J.C., who was born in 2011. The parties separated in July 2012, and both filed for divorce in September 2012. In the final decree of divorce, Melissa was appointed sole managing conservator of A.J.C., and Joshua was appointed possessory conservator. The divorce decree limited Joshua to supervised visitation with A.J.C. as a result of his history of family violence. Joshua's visitations with A.J.C. were required to be supervised by Safe Harbour in Bryan, Texas. In the final divorce decree, the trial court also found that A.J.C. required "substantial care and personal supervision because of a mental or physical disability," as A.J.C. had been diagnosed with non-verbal autism. Joshua's child support payment was set at $1,434.02 per month.

The trial court made the following findings and conclusions regarding the child support order:

1.  The amount of child support ordered by the Court deviates from the percentage guidelines.

2.  The net resources of Joshua Joseph Cone per month are $5,736.06.

3.  The net resources of Melissa Marie Cone per month are $0.

4.  The percentage applied to Joshua Joseph Cone's net resources for child support is 25% percent.

The divorce decree further provides that Joshua is responsible for retroactive child support in the amount of $15,385.51 from the period between January 2015 and November 2016.

Joshua was awarded, in part, as his sole and separate property: a 2005 Cadillac Escalade, a 2005 Harley Davidson Sportster, a Bowflex, and a .357 Ruger handgun. Melissa was awarded, in part, as her sole and separate property: A.J.C.'s car seat and stroller, all of A.J.C.'s property, and $910.50 for a 2012 tax refund and a firearm sold by Joshua. The divorce decree notes: "Costs of Court awarded to Joshua Joseph Cone for the appeal have been offset by the division of the marital property above."

After the decree was entered, Joshua filed a motion to modify, correct, or reform the judgment raising the issues he has raised in this appeal. The motion was denied by the trial court. At Joshua's request, the trial court made the following pertinent findings of fact:

[8.] The Court found and considered the following when deviating from the standard guidelines on support: Testimony of Joshua Joseph Cone's net resource[s] including pay stubs provided and Joshua Joseph Cone's testimony that he receives $1,500.00 to $1,600.00 per month in VA benefits for a net resource per month of $5,736.06; The net resources of Melissa Marie Cone are $0 per month; the percentage applied to Joshua Joseph Cone's net resources is 25% in which the Court considered the special need of the child.

. . .

[10.] When considering the retroactive child support in this case, the Court considered the following: In previous support agreements prior to the Final Decree, Joshua Joseph Cone's VA benefits were never considered, disclosed or provided and testimony showed Joshua Joseph Cone received VA benefits in the amount of $1,500.00 to $1,600.00 per month since the beginning of this matter. Joshua Joseph Cone's testimony also showed that he was employed for periods while this matter has been ongoing. Thus, at a minimum, Joshua Joseph Cone's support should have been the minimum wage presumption plus approximately an additional $325.00 to $350.00 per month based on the amount received for the VA benefits. There was no testimony that Joshua Joseph Cone had not paid child support at the minimum wage figure, so calculating the increase of the amount he should have paid and the calculation from his current employment through the

date of trial was more than Petitioner's requested retroactive child support amount.[1]  Therefore, retroactive child support judgment was set at $15,385.51.

[11.]  When considering the division of the community estate, the Court considered the following:  The community property that was already in each parties [sic] possession; All debt and liabilities that each of the parties have incurred from and after July 21, 2012; The property nature of the .357 Ruger handgun.

The trial court's conclusions of law found that the property division was "just and right, having due regard for the rights of each party and the child of the marriage, irrespective of the characterization of any item of property as either community or separate."  The trial court further noted that Joshua should pay child support in the amount of $1,434.02 and medical support in the amount of $50.00 per month beginning on December 1, 2016.  Joshua was additionally ordered to pay $15,385.51 as retroactive child support in the amount of $50.00 per month until the arrearage is paid in full.

After Joshua's appeal, he requested that we transfer the appellate record from his first appeal into the record of this appeal, which we granted.

### Issues

Joshua raises the following issues:

(1)  The trial court erred in deviating from the child support guidelines based on special needs of the child which did not include any evidence of needs in excess of the support guidelines.

(2)  The trial court's decree fails to comply with section 154.132 of the Family Code.

(3)  The evidence is insufficient to support the retroactive support awarded.

---

[1] Melissa requested retroactive child support of $15,385.51 in her "Argument and Request of Court" filed on December 2, 2016.

(4)     The trial court erred in failing to award Joshua costs on appeal in accordance with the judgment and mandate of this Court.

## *Discussion*

A. Standard of Review.     In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. *Brejon v. Johnson*, 314 S.W.3d 26, 30 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We review a trial court's decisions regarding conservatorship, child support, including arrearages, and property division, under an abuse of discretion standard. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (*per curiam*). *See Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981)) (property division); *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011) (child support); *Cline v. Cline*, 557 S.W.3d 810, 813 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (arrearages); *Smith v. Smith*, 143 S.W.3d 206, 213, 214, 217 (Tex. App.—Waco 2004, no pet.) (property division, conservatorship, and child support). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *Worford*, 801 S.W.2d at 109; *Smith*, 143 S.W.3d at 212.

When applying an abuse-of-discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but are factors used in assessing whether the trial court abused its discretion. *Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support the trial court's judgment." *Id.* If findings are challenged, they are not determinative unless

supported by the record. *Brejon*, 314 S.W.3d at 30. An abuse of discretion does not occur when the trial court's decision is based on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Kana Energy Servs., Inc. v. Jiangsu Jinshi Mach'ry Group Co.*, Ltd., 565 S.W.3d 347, 351 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In such a situation, the trial court is in a better position to determine "the candor, demeanor, and credibility of the witnesses. . . ." *In re Hernandez*, No. 10-09-00136-CV, 2011 WL 3821995, at *3 (Tex. App.—Waco Aug. 10, 2011, no pet.) (mem. op.).

To determine whether a trial court abused its discretion because the evidence is legally or factually insufficient to support its decision, we consider: (1) whether the trial court had sufficient evidence upon which to exercise its discretion; and (2) whether it erred in its application of that discretion. *Bush v. Bush*, 336 S.W.3d 722, 729 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). We conduct the applicable sufficiency review when considering the first prong of the test. *Bush*, 336 S.W.3d at 729; *Moroch*, 174 S.W.3d at 857. We then determine whether, based on the evidence, the trial court made a reasonable decision. *In re S.T.*, 508 S.W.3d 482, 489 (Tex. App.—Fort Worth 2015, no pet.); *Moroch*, 174 S.W.3d at 857.

B. Child Support for Special Needs Child. In his first issue, Joshua asserts that the trial court erred in deviating from the child support guidelines based upon A.J.C.'s special needs because there was no evidence that those special needs required such a deviation. Basically, Joshua argues that Melissa presented no evidence that she had

incurred expenses due to A.J.C.'s condition and, consequently, no evidence that his needs would not be met by support under the guidelines.[2]

Section 154.122 of the Family Code provides:

(a) The amount of a periodic child support payment established by the child support guidelines in effect in this state at the time of the hearing is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child.

(b) A court may determine that the application of the guidelines would be unjust or inappropriate under the circumstances.

TEX. FAM. CODE ANN. § 154.122. The trial court may vary from the guidelines in establishing the amount of child support payments if "the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines." *Id*. § 154.123(a). In making that determination, the trial court should consider all relevant factors, including the following:

 (1)    the age and needs of the child;

(2)    the ability of the parents to contribute to the support of the child;

(3)    any financial resources available for the support of the child;

(4)    the amount of time of possession of and access to a child;

(5)    the amount of the obligee's net resources, including the earning potential of the obligee if the actual income of the obligee is significantly less than what the obligee could earn because the obligee is intentionally unemployed or underemployed and including an increase or decrease in the income of the obligee or income that may be attributed to the property and assets of the obligee;

---

[2] Joshua appears to additionally argue that the trial court did not make a specific finding that application of the guidelines would be unjust or inappropriate as required by § 154.122. However, Joshua did not make a timely request, objection, or motion in the trial court regarding this issue and it is waived. TEX. R. APP. P. 33.1(a); *Adeleye v. Driscal*, 544 S.W.3d 467, 479 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

(6)     child care expenses incurred by either party in order to maintain gainful employment;

(7)     whether either party has the managing conservatorship or actual physical custody of another child;

(8)     the amount of alimony or spousal maintenance actually and currently being paid or received by a party;

(9)     the expenses for a son or daughter for education beyond secondary school;

(10)     whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity;

(11)     the amount of other deductions from the wage or salary income and from other compensation for personal services of the parties;

(12)     provision for health care insurance and payment of uninsured medical expenses;

(13)     special or extraordinary educational, health care, or other expenses of the parties or of the child;

(14)     the cost of travel in order to exercise possession of and access to a child;

(15)     positive or negative cash flow from any real and personal property and assets, including a business and investments;

(16)     debts or debt service assumed by either party; and

(17)     any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents.

*Id.* § 154.123(b).

While the trial court should consider all relevant factors under § 154.123(b), those enumerated factors are not exclusive. *In re Marriage of Grossnickle*, 115 S.W.3d 238, 246

(Tex. App.—Texarkana 2003, no pet.). The trial court may consider any other factors it deems relevant in determining the amount of child support. *Id.*

In the divorce decree, the trial court noted that A.J.C. "requires substantial care and personal supervision because of a mental or physical disability." Joshua requested specific findings pursuant to § 154.130 of the Family Code. *See* TEX. FAM. CODE ANN. § 154.130. The trial court found that Joshua's net resources were $5,736.06 per month, while Melissa's net resources were $0 per month. The trial court also noted that "the percentage applied to Joshua Joseph Cone's net resources is 25% in which the Court considered the special need of the child." Joshua argues that factor thirteen of § 154.123(b), the "special or extraordinary educational, health care, or other expenses of the parties or of the child," is applicable and that the trial court erred because Melissa made no showing that she incurred extra expenses due to A.J.C.'s condition. The trial court did not specify which of the enumerated factors under § 154.123(b) were considered.

Melissa testified at the final hearing on November 18, 2016 that A.J.C. was diagnosed with nonverbal autism in 2015, although he had been exhibiting developmental delays and other problems since he was approximately two years old. At the time Melissa testified, A.J.C. was approximately five years old. Because of his condition, A.J.C. was unable to feed himself and was resistant to potty training. Melissa further noted that A.J.C. would have "melt downs" if his schedule was changed without notice. Melissa testified that A.J.C. attends school from 8:30 to 11:00 during the week, followed by autism therapy in Bryan twice a week. As Melissa and A.J.C. live in Somerville, it takes her forty-five minutes each way to drive to and from Bryan. Melissa

noted that the cost of the autism therapy is covered by a grant. Melissa also testified that A.J.C. is visited by three different therapists while at school, for which she is not charged. Melissa stated that A.J.C.'s problems have caused her to have to care for him practically full time, except for those times when he is in school. Melissa testified that, because of A.J.C.'s limitations, she could not take him out in public as unfamiliar places and unfamiliar people cause him anxiety and cause him to act out. Due to A.J.C.'s disabilities, he receives social security disability and Medicaid. Melissa testified that she and A.J.C. also receive food stamps. Melissa noted that, in addition to the child support paid by Joshua, her parents support her and A.J.C. financially and have provided them a mobile home in which to live.

As noted, the divorce decree provides that Joshua has supervised visitation with A.J.C. at Safe Harbour in Bryan on the first and third Saturdays of each month for a period of two hours. Melissa is required to transport A.J.C. to Safe Harbour for those visitations.

When the first final hearing was held in 2013, Joshua did not testify because the trial court refused to allow him to take the Fifth Amendment on specific questions. Therefore, there was no evidence at that time of Joshua's income. Child support was set pursuant to § 154.009(a) of the Family Code based upon a forty-hour work-week at minimum wage. Joshua was ordered to pay child support in the amount of $233.64 per month.

When the final decree of divorce was signed in 2017, Joshua was employed with an annual income of $72,880.86, plus $1,500.00 to $1,600.00 per month in VA disability

benefits.  Joshua was also newly married and had bought a house.  Melissa's resources were still $0.

The evidence supports a determination that Melissa was unable to work due to A.J.C.'s disability, and she had very few resources other than a 2008 Nissan, a small amount of social security disability, and food stamps.  Melissa was also responsible for the expenses of transporting A.J.C. to Bryan for therapy and for supervised visitations with Joshua.  The foregoing constitutes some evidence of a substantive and probative character to support the trial court's judgment.

Considering the § 154.123(b) factors and all other factors related to A.J.C.'s special needs, the trial court did not abuse its discretion in determining that the percentage of child support deducted from Joshua's income should be 25% rather than 20%.  We overrule Joshua's first issue.

C.  Section 154.132.  In his second issue, Joshua specifically argues that the trial court failed to deduct $95 from his child support obligation which Melissa was receiving in disability benefits for A.J.C.  Section 154.132 of the family code provides:

> In applying the child support guidelines for an obligor who has a disability and who is required to pay support for a child who receives benefits as a result of the obligor's disability, the court shall apply the guidelines by determining the amount of child support that would be ordered under the child support guidelines and subtracting from that total the amount of benefits or the value of the benefits paid to or for the child as a result of the obligor's disability.

TEX. FAM. CODE ANN. § 154.132.

The evidence before the court was that A.J.C.'s social security disability benefits were reduced by the $95.00 that A.J.C. was receiving from the VA.  The food stamps

Melissa and A.J.C. had been receiving were also cancelled due to their receipt of VA benefits, although the food stamps were subsequently restored. Melissa testified that she had never applied for or received on behalf of herself or A.J.C. any benefits from the VA. Melissa further testified that a counselor with the VA in College Station told her that Joshua was collecting those benefits on behalf of A.J.C.

Joshua testified that he applied for VA disability benefits in 2012, before the divorce petitions were filed, and began receiving benefits in 2014. Joshua also testified that he had identified both Melissa and A.J.C. as his dependents in the application for VA benefits. Joshua testified that after he remarried, he replaced Melissa in the VA records with his new wife. There was no evidence before the trial court that Joshua ever removed A.J.C. as a dependent. Additionally, Joshua never denied that he was receiving additional benefits on behalf of Melissa or A.J.C.; he merely stated that he did not know.

The foregoing constitutes some evidence of a substantive and probative character in support of the trial court's judgment. Because the trial court was in the best position to evaluate the credibility of the witnesses, there was sufficient evidence for the trial court to find that Joshua was receiving an additional $95.00 per month on behalf of A.J.C. rather than Melissa. The trial court did not abuse its discretion in failing to reduce Joshua's child support obligation by $95.00. We overrule Joshua's second issue.

D. Retroactive Award. In his third issue, Joshua contends that there was insufficient evidence to support the retroactive support awarded to Melissa. In the final

divorce decree, the trial court directed Joshua to pay retroactive child support for the period from January 2015 through November 2016 in the amount of $15,385.51.[3]

Pursuant to § 154.009 of the family code, the court may order a parent to pay retroactive child support, and may order "retroactive child support back to the date of the separation of the child's parents." TEX. FAM. CODE ANN. § 154.009(e).

At the final hearing, Joshua testified that he began receiving VA disability benefits in an amount between $1,500 and $1,600 per month in August of 2014. VA disability benefit payments are included in the calculation of child support payments. *Id.* § 154.062(b)(5). Joshua further testified that he was employed full-time in April 2016 at an annual salary of $72,880.86. Joshua's VA benefits and salary were not previously considered in the calculation of his support payments.

The starting date for the trial court's calculation of the amount of arrearage owed by Joshua in the final divorce decree was January 1, 2015. From that date until the final divorce decree was signed, Joshua paid $233.64 per month in child support. That amount was based upon a forty-hour work week at minimum wage. *Id.* § 154.009(a).

Joshua argues that the trial court erred because it made a finding that Joshua received VA benefits "since the beginning of this matter." Even if the trial court erred in making that finding, the final divorce decree, as noted, used January 1, 2015 as the beginning date for calculation of any arrearage. The starting date used by the trial court

---

[3] As previously noted, Melissa requested retroactive child support of $15,385.51 in her "Argument and Request of Court" filed on December 2, 2016

worked to Joshua's benefit as it excluded the VA benefits Joshua received from August 2014 through December 31, 2014 in the calculation of the arrearage.

Joshua also argues that the trial court erred because it based the retroactive calculation on Joshua's income in 2015 when there was no evidence of his employment in 2015. Joshua argues that the trial court erred in considering his 2015 income tax statement because it was not introduced at the final hearing but merely attached as an exhibit to Melissa's summation. There is no indication, however, that the trial court used Joshua's 2015 income tax statement when it calculated the arrearage.

As Melissa argues, the trial court could have ordered twenty retroactive payments of $320 based on twenty percent of Joshua's VA benefits of $1,600 and eight retroactive support payments of $1,147.21, totaling $15,385.51, the amount awarded by the trial court. The trial court could have included additional amounts based upon Joshua's testimony at the final hearing that he had been employed during the period his child support obligation was based upon a minimum wage. The foregoing constitutes some evidence of a substantive and probative character to support the trial court's judgment.

The trial court did not abuse its discretion in directing Joshua to pay an arrearage of $15,385.51. We overrule Joshua's third issue.

E. Award of Appellate Costs. Joshua argues in his fourth issue that the trial court erred by failing to include the appellate costs he was awarded on appeal as part of the property division. In the final divorce decree, the trial court notes: "Costs of Court awarded to Joshua Joseph Cone for the appeal have been offset by the division of the

marital property above." The record reflects that the amount paid by Joshua as costs is $2,113.00.

There is sufficient evidence in the record to reflect that the division of property in the final divorce decree signed on January 19, 2017 reflected a division that credited Joshua in an amount sufficient to cover the costs he paid. In only one instance, the final divorce decree signed on March 28, 2014 directed Joshua to pay one-half of Melissa's attorney's fees in the amount of $7,000.00. The 2017 decree directed that each party should pay their own attorney's fees, a $7,000.00 savings to Joshua that more than covered the costs of his appeal. The foregoing constitutes some evidence of a substantive and probative character to support the trial court's judgment.

The trial court did not abuse its discretion in determining that Joshua received a credit of at least $2,113.00 in the division of the marital property. We overrule Joshua's fourth issue.

### *Conclusion*

Having overruled all of Joshua's issues, we affirm the judgment of the trial court.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
     (Justice Neill concurring without a separate opinion)
Judgment affirmed
Opinion delivered and filed August 14, 2019
[CV06]

